UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WEI SENG PHUA, *et al.*,<br><br>Defendants. | Case No. 2:14-cr-00249-APG-PAL<br><br>**Order on Defendant's Motion to Suppress**<br><br>(Dkt. #480) |

I ruled in a prior order that the government unconstitutionally searched defendant Wei Seng Phua's villa twice while he stayed at the Caesars Palace Hotel & Casino, and I therefore suppressed all evidence the government found in his villa. (*See* Dkt. #474.)  I also indicated Phua could move under the fruits of the poisonous tree doctrine to suppress evidence the government seized in two other nearby villas.  He now does so.

Once the government illegally searches a premises, it bears an onerous burden to prove that any later searches were not fruit of the illegal search.  This rule encourages the government to respect the Fourth Amendment's protections by removing incentive to break them.  The government has not met its burden here.  Prior to the illegal searches in this case, the government's attorney felt there was insufficient probable cause to obtain a search warrant.  Government agents then carried out the two illegal searches, the second of which involved an elaborate ruse to search Phua's villa.  Immediately after this second search, one government agent said the search gave them "what [they] needed."  Later that day—and without obtaining any additional evidence than what was learned through the illegal searches—agents began drafting the search warrant affidavit.

The evidence shows that the unconstitutional searches of Phua's villa, and what was found there, influenced the government's decision to seek a warrant to search the other villas.  I do not find the government would have searched the other villas had it not first searched Phua's.

For the reasons set forth below and in my oral findings at the May 26, 2015 hearing, I grant Phua's motion to suppress.

## I.     Discussion

I set forth the factual background in my prior order (Dkt. #474), so I recite only the relevant facts below.

### A. Suppression of evidence seized in villas 8888 and 8881

Under the poisonous tree doctrine, evidence found in a search should be suppressed if the search was prompted by what investigators found in a prior unconstitutional search. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v. Santa Maria*, 15 F.3d 879, 883 (9th Cir. 1994). Where the government illegally searches a premises and then conducts a second search after securing a warrant, "[i]t is the government's burden to show" the evidence in the second search "is not 'fruit of the poisonous tree.'" *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011) (citations omitted). This "onerous burden" requires the government to convince the court that "no information gained from the illegal entry affected [1] the law enforcement officers' decision to seek a warrant or [2] the magistrate's decision to grant it." *Murray v. United States*, 487 U.S. 533, 539 (1988).

Here, the evidence the government seized in villas 8888 and 8881 following its unconstitutional searches of villa 8882 must be suppressed unless the government can meet its burden to prove (1) it would have sought warrants for 8888 and 8881 even if it had never illegally searched 8882 and (2) the magistrate judge would have issued these warrants. *Id.* As to the first element, I "must explicitly find that the agents would have sought a warrant if they had not" conducted the unconstitutional searches of villa 8882. *United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995); *United States v. Hale*, 124 F.3d 213 (9th Cir. 1997) (stating "(1) the government [must] successfully demonstrate[] an independent basis for establishing probable cause, and (2) the district court [must] specifically find[] that the officers would have sought the warrant even if they had not conducted the prior warrantless entry"). I analyze each villa in turn.

####     i.     Villa 8888

As to villa 8888, the government has not met its burden of showing it would have sought and obtained a warrant for this villa if it had not first illegally searched villa 8882.

Before the unconstitutional searches, the government had little direct evidence of illegal gambling occurring in villa 8888.  Caesars personnel were initially concerned because the guests in villa 8888 had a number of computers and chairs configured in a way that looked like a gambling "boiler room," and a Caesars employee said he saw what appeared to be betting odds displayed on one of the computers. (Dkt. #474 at 2.)  The Nevada State Gaming Control Board began investigating.  Gaming agents suspected Phua might be involved, and they possessed information about his recent arrest in Macau. (#480-12 at 2-3.)  But the Gaming Control Board concluded it did not have enough information to move forward against the residents of villa 8888. (*See* Dkt. #480-12 at 1 (Gaming Control Board Agent David Salas stating that, as of June 25, 2014, "[b]asically, we got nothing."); Dkt. #360 at 83-84 (Gaming Control Board Agent Felt stating that, as of June 25, 2014, the board concluded it did not have enough to pursue a case).)

The FBI's investigation added only a few pieces of evidence to the mix.  The FBI was interested in Phua because he had recently been arrested for illegal gambling in China.  The FBI was aware that Phua was staying in villa 8882, that Phua's villa was reserved on the same day by the same host as villa 8888, and that Phua and the guests in villa 8888 both frequented a gaming salon Phua had reserved for a larger group.  But the government has not identified any other specific facts showing that, before the unconstitutional searches, it had concrete evidence of any illegal bets occurring in villa 8888.

The evidence further indicates the government did not believe it had enough probable cause to seek a warrant before the unconstitutional searches.  Agent Pham stated on July 1, 2014—3 days before the first illegal search—that Assistant United States Attorney Eric Johnson told him that the government needed to "tighten up the PC," or probable cause. (Dkt. #480-5 at 2.)[1]  Instead of seeking a warrant based on the evidence it had, the government developed an

---

[1] As pointed out by the government at the hearing, Agent Pham's statement also discussed seizure of Phua's private jet.  Pham's full statement, made in an email, is: "I talked to Eric Johnson this morning.  He said they will definitely work this case with two identified Triad

unprecedented plan to cut off the DSL service to the villas and pose as repairmen to search them without a warrant. (Dkt. #406 at 20.)  While the government is not required to stop its investigation as soon as it has probable cause, it seems unlikely it would have planned an elaborate ruse to conduct warrantless searches if it already believed it had probable cause at this point.

Finally, the evidence shows that the unconstitutional searches yielded information the government believed it needed to seek a warrant.  Right after the first unconstitutional search on July 4, Gaming Control Board Special Agent Lopez said he believed an illegal gambling operation was being "run out of" villa 8882 based on what he had seen and overheard while inside. (Dkt. #480-11 at 20.)  The next day, while walking away from the second unconstitutional search, Agent Lopez stated: "We saw what we needed. Very [m]uch." (Dkt. #480-11 at 71.)  Agent Pham began drafting the warrant application to search the villas when he left Caesars that day. (Dkt. #406 at 20); *see U.S. v. Siciliano*, 578 F.3d 61, 75-76 (1st Cir. 2009); (noting that whether agents began drafting a warrant application before an illegal search is probative of whether agents would have sought a warrant absent the illegal search); *United States v. Hobbs*, 509 F.3d 353, 362 (7th Cir. 2007) (same).

Finally, although the government characterizes its unconstitutional searches as "largely unproductive" (Dkt. #493 at 5), it found crucial evidence during the searches that likely influenced its decision to seek a warrant.  Agents contend they saw an illegal gambling website displayed on one of Phua's computers and an instant message discussing a "hedge bet." (Dkt. #407 at 6.)  The government has not pointed to any other direct evidence of illegal betting in any of the villas, other than these two pieces found during the unconstitutional searches.

To counter Phua's substantial and specific evidence—supported by citations to record proof—the government provides little response.  It did not respond to most of Phua's

---

members: Wei Phua and Seng Yang.  He said Phua's private jet is seizable. We just need to tighten up the PC." Dkt. #480-5, at 2.)  While there may be multiple interpretations of this statement, the government did not dispute the meaning or context of this statement in any way in its response.  Even at the hearing, the government did not offer to call Pham or Johnson to explain this statement.

arguments and evidence, and it did not properly support many of its own arguments with specific factual allegations.

The government makes several conclusory assertions that it would have sought a warrant for villa 8888 even if it had never searched villa 8882.  The government points to what it knew about Phua before the searches of his villa, his links to villa 8888, and the evidence collected by Caesars and the Gaming Control Board before the illegal searches.  But despite knowing all this evidence, AUSA Johnson still told Agent Pham that probable cause needed to be "tightened up."  Knowing most of this information, the Gaming Control Board concluded it would not move forward against the residents of villa 8888.  And despite knowing all of this, the government planned and carried out an unprecedented ruse to conduct a warrantless search, instead of seeking a warrant.

Weighing all of the evidence, I find the government has not met its onerous burden to show it would have sought a search warrant for villa 8888 had it not first unconstitutionally searched villa 8882.  This is enough to suppress the evidence seized in villa 8888.

But even if the government would have sought a search warrant for villa 8888, the government has not met its second burden: to show that the magistrate judge would have issued the warrant.  Aside from the fruit of the constitutional search, there were only a few pieces of circumstantial evidence indicating that illegal gambling was occurring in villa 8888.  The "hedge bet" comment and illegal gambling website observed during the illegal search were the only direct pieces of evidence that illegal bets had occurred in the villas.  I do not find that the government has established the magistrate judge would have issued a warrant for villa 8888. Evidence seized in villa 8888 is also suppressed for this independent reason.

        *ii.*     *Villa 8881*

As to villa 8881, the government appeared to concede at the hearing and in its opposition that if I suppress the evidence found in villa 8888, I should also suppress evidence seized from villa 8881.  Regardless, the government pointed to no evidence showing that it

- 5 -

would have sought a warrant for villa 8881 had it not first searched villas 8882 and 8888. I therefore suppress all evidence seized in villa 8881 as well.

### B. Evidentiary hearing

Whether to hold an evidentiary hearing on a motion to suppress is within my discretion. *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012); *United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). I need not hold an evidentiary hearing unless the papers "allege facts with sufficient definiteness, clarity, and specificity to enable [me] to conclude that *contested issues of fact exist*." *Howell*, 231 F.3d at 621 (emphasis added).

An evidentiary hearing is unnecessary here. Neither party requested one in their papers. (*See* Dkt. ##480, 493, 499.) More importantly, the government failed to articulate any definite, clear, and specific factual allegations from which I could conclude the parties contest any of the facts I rely on in ruling on this motion. The specific facts raised by both parties in their papers, and that I rely on in ruling on the motion, are uncontested. For example, in its response, the government did not dispute or attempt to explain AUSA Johnson's statement that the government agents needed to "tighten up" the probable cause to support the search warrant application. It did not dispute that the agents made statements indicating they found key evidence during the unconstitutional searches. It did not dispute that agents started drafting the warrant application immediately after the unconstitutional searches. Nor did it dispute that investigators found no new evidence between the time AUSA Johnson expressed concern about probable cause and the time it submitted the warrant applications—other than what was found during the illegal searches. Finally, the government did not dispute or attempt to explain why it chose to carry out an unprecedented warrantless search if it already had enough probable cause to search villa 8888.

At the hearing on this motion and in a recently filed motion for reconsideration (Dkt. #512), the government argues it created contested factual issues in its papers either by (1)

- 6 -

making conclusory statements that agents would have pursued a warrant for villa 8888 or (2) referring to the evidence possessed by the FBI prior to the searches.

The government's first argument fails. Merely disagreeing about the ultimate conclusion I must make—whether agents would have sought and obtained the warrant—does not constitute definite, clear, and specific allegations of fact from which I could determine an evidentiary hearing is needed. If this were so, parties would be entitled to an evidentiary hearing anytime an attorney argues in a brief that I should make a certain ultimate decision in their favor.[2] The government's conclusory statements to the effect that agents would have sought a search warrant for villa 8888 are speculative attorney arguments. (*See* Dkt. #512 at 5 (citing to statements the government makes in its opposition, such as that "FBI agents would have sought a warrant for Villas 8881 and 8888").) I need not consider them when deciding to grant an evidentiary hearing, and I need not consider them when making my ultimate factual decisions. *Wood v. Stratos Prod. Dev., LLC* (*In re Ahaza Sys.*), 482 F.3d 1118, 1122 n.1 (9th Cir. 2007) ("[A]rguments and statements of counsel are not evidence."); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n. 5 (8th Cir. 1995) (holding statements of counsel are not evidence and do not create issues of fact).

The government's second argument also fails. I looked to all of the specific facts raised by the parties to determine whether an evidentiary hearing was needed to ascertain credibility or settle any factual disputes. The government was on notice of what specific facts Phua wanted me to consider in ruling on his suppression motion. The government chose not to contest any of those specific facts, opting instead to cite to additional facts of its own. The government's

---

[2] The government points out in its motion for reconsideration that Phua also made conclusory statements in his papers to the effect that the government would not have sought a warrant. (Dkt. #512 at 4-7) But, rightly so, Phua has not cited these conclusory statements as a basis for creating a contested factual issue entitling him to an evidentiary hearing. The government suggests that I am resolving "the one disputed issue based on an assumption." But the disputed issue before me is whether the government would have sought and obtained a warrant absent its illegal searches. This issue is an ultimate question that I must determine, based on the specific underlying facts provided by the parties. It is the parties' burden to provide at least allegations about what facts I should rely on to make this ultimate decision. And the parties have not identified any dispute about the specific factual allegations that underlie my ultimate decision.

- 7 -

specific factual allegations included reference to evidence collected by Caesars and the Gaming Control Board, as well as information the FBI possessed about Phua's prior gambling activities and arrest in Macau. There are no disputes about the specific facts the parties alleged in their papers. I have considered all of them, and I have ruled based on all of them.[3] Therefore no evidentiary hearing is needed.

Notably, the government requested an evidentiary hearing, for the first time, at the oral hearing on this motion. I need not consider new allegations or arguments not included in the government's papers. *See Alvarado v. FedEx Corp.*, No. C 04-00098 SI, 2006 WL 644875, at *1 (N.D. Cal. Mar. 13, 2006). But even if I did consider them, the only witness the government offered to call at the hearing (FBI Special Agent Thayne Larson) is not named in any of the relevant documents or communications, was not a party to the important conversation with AUSA Johnson about the lack of probable cause, and did not sign the warrant affidavit. (Dkt. ##229-3, 480-5.) Notably, the government did not offer to call FBI Special Agent Pham, Gaming Control Board Special Agent Lopez, or AUSA Johnson, all of whom were intimately involved in the investigation, ruse, or warrant application.[4]

Because the parties did not identify any disputes about the specific facts I rely on to reach my decision on Phua's motion, I declined to hold an evidentiary hearing.

/ / / /

/ / / /

/ / / /

---

[3] The government suggests that I denied it an evidentiary hearing because it failed to cite to affidavits or record evidence in its opposition. This is not so. To the extent my oral rulings were unclear, I denied the government an evidentiary hearing because it did not allege any specific fact that is in dispute. I emphasized that the government offered no affidavits or record citations to point out factual disputes. But my denial of an evidentiary hearing is based on the lack of any dispute regarding the facts underlying my ultimate decision.

[4] The government's counsel also suggested I should comb through the voluminous transcripts and evidence in the record to determine whether factual disputes exist. But it is not my burden to search the record to find supporting facts. *See Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994) ("District judges are not archeologists. They need not excavate masses of papers in search of revealing tidbits.").

- 8 -

II.  **Conclusion**

Defendant Wei Seng Phua's motion to suppress (Dkt. #480) is GRANTED.

DATED this 28th day of May, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

- 9 -